This case, in my view, involves a question that has naturally arisen in the wake of Booker and the return to individualized sentencing. I think it illustrates the inherent tension between the individualized sentencing that has been returned to the district courts by Booker and Congress' goal of providing for uniformity in sentencing. As pointed out in the briefs, Mr. Dee faced a guideline term of 4 to 10 months. The district court sentenced him to 2 or 3, depending, or 4, depending upon how the court would look at it, times that amount to a sentence of 18 months. Now, the court didn't do that by analyzing departure issues and applying the guidelines. The court didn't depart, so to speak, from the guidelines. And in all fairness to the district court, this occurred, you know, shortly after Booker and before this Court's decisions in many whether in those lines of cases. But nevertheless, what I would argue to the Court here today is that there were, in fact, no issues that would support a departure under the guidelines. And that the district court's decision here was based on primarily, in large part, upon its view of the offense. And I think its disagreement with the sentence called for by the sentencing guidelines. Well, what does it mean to have discretion under the guidelines now? You said he didn't apply the guidelines. The first step under our construct is there has to be an appropriate calculation, and you're not challenging that, because that produced the 4 to 10 months. Isn't that right? That's correct. So then under the more general factors that are committed to the district court's discretion, then he went through and he seemed to focus heavily on the particular nature of this offense, the grabbing the passenger and creating terror and fear amongst passengers and the like, and to some extent on the underrepresented criminal history. And then there's a suggestion that there was the obstruction of justice because he didn't show up at one or two of these hearings. Now, what is it that is wrong with the judge looking at the particular circumstances, going through the analysis he did, and concluding that he can sentence, well, let's see, it was 4 to 10 and he went, what, 8 months over the guidelines? 18, yes. Yes, but he had a 4 to 10 month range if he took strict guidelines. So if he sentenced at the high end, that would have been 10, he added 8 months. So on this record, why does this seem to be unreasonable? Or is there some technical or legal flaw in what he did? We're not, I'm not arguing a technical flaw here. There might be in that we weren't given notice, but I'm not going to raise that issue for the same reason. I'm not really taking technical issue on the last case. But our problem here is that when you look in the record after I stated my objection that the sentence was unreasonable, what the court said is, I can't quote him directly, but he said, notwithstanding the low calculation of the guidelines, I view this type of conduct as very serious, warranting more serious punishment. Now, I read that as the district court stating its disagreement with the way the guideline calculation came out. Yeah, well, I suspect he did. But then, so what's in this evolving regime we're all wrestling with? What should he have done? In order to, are you saying there's no way he could go to the above guideline range? Or what should he have done to justify it? He could have. But I think that his primary reason wasn't based so much on the individual circumstances of this case, but rather his disagreement with the guidelines in general as they applied to this offense. Where do you draw that? Well, I draw that, I guess, for a couple of reasons. Number one, Mr. Gee's conduct on the plane was really fairly similar to the type of conduct that these kinds of defendants get in trouble for. Threatening behavior, drunken behavior, abusive behavior. On a plane? Well, when you're charged under this offense. And if the court. Where they actually, where he actually attacks another passenger, grabs him from behind? There, you know, the. In this post-Nile world? I'm flying this afternoon and I'll tell you, some guy grabs me from behind. I don't think 18 months is a good one. Can I focus on something else, though? I mean, our law is evolving. And one of our latest decisions, U.S. v. Cantrell, we first looked to the district court's calculation of the guidelines and determined whether there was a material error. And in our pre-Booker case law, we always held that it was a material error if there was double counting in the ultimate sentence. And here, the district court increased the guidelines calculation by two for double counting. And then in his departure, I'm sorry, increased for obstruction of justice. And then in his departure analysis, he then used the fact that your client failed to appear at the court appearances as a factor in the departure. Now, are you arguing that that's double counting? That he had already taken into account in calculating the guidelines those failures to appear, and then he took them into account again? Is that what you're arguing? Well, and I put it maybe a little differently. The way I've argued it in my brief is that it was already considered, and that under this Court's older decisions dealing with departure, that a court could depart upward for obstruction of justice, but there had to be something unusual about it, something taking it out of the heartland of the normal obstruction, if you will. And here what happened is this defendant missed two court appearances, one of which I take issue with whether or not that was his fault. But that simply didn't take it outside of the heartland. So then to use that as an issue to up his sentence, yes, I think was improper. Pre all of this, we would, I mean, when I was sentencing as a district court judge, you would not, if you were increasing the sentence for particular offense, related offense conduct, you were prohibited from increasing it again for the same conduct. Well, I don't know whether that's called double counting or not double counting, but that you couldn't just keep adding things for the same conduct. And that's, I don't know if, is that what the district court judge did here? He did that with respect to the obstruction. Now, there were, as Judge Fisher pointed out, there were a couple of other factors. But, yes, with the obstruction of justice, I think he did, because that had already been taken into account by the sentencing guidelines. So unless there's any other questions, I'll preserve the remainder of my time. Thank you. Good morning. My name is Joe Thagard. I'm an assistant United States attorney from the District of Montana, and I represent the government in this matter. This issue, as the court has pointed out in its colloquy with Mr. Ness, falls within the emerging case law in this area and what essentially constitutes a reasonable sentence. And as the court is aware from the Cantrell case and some of the other cases which have followed it, there's essentially a two-step process in this individualized sentencing scheme, which we have now. The first is that there be a correct guideline calculation. And it's the government's position that in this matter, there was a correct guideline calculation. And my understanding from reading Mr. Ness' brief and hearing his comments before the court this morning is he doesn't necessarily contest that there was an accurate guideline calculation by the court. The second step, then, is the consideration of the 3553A factors, which is exactly what the court did in this matter. And it looked at the individualized circumstances of this case. And while this defendant may be somewhat pathetic in some respects and certainly has had some difficulties in his life recently and in the time period surrounding the offense, the bottom line is this was an extremely serious offense. He did really terrorize people on this plane. He placed his hands on a passenger, which is certainly a very concerning thing. I think any of us would agree that when you're in a confined circumstance and somebody places their hands on you, and it's in the context of them threatening other people, that that is a serious situation. The bottom line from the United States' perspective is that the court considered the guideline range. It considered all the circumstances of this offense as well as all the 3553A factors and concluded simply that a reasonable sentence was 18 months. That's the government's position. I really have nothing else to add to that. I'll certainly entertain any questions that the panel might have of me. The thing that's troubling to me is that the district court stated the failures to appear as part of his rationale for increasing the levels. If he had just stopped at this is a very serious offense, you know, placing passengers in an airplane in jeopardy and, you know, certainly instilling fear, forcing a landing, if he had just stopped there and not given as an additional reason the failures to appear, which had already been included in the guideline calculation, the sentence probably, I would probably view this case in a different way and say, oh, yes, it's reasonable based on all the seriousness. I mean, is the problem that is raised is just that he's stated that additional factor? Well, Your Honor, I don't know that it's necessarily a problem at all. The 3553A factors, as the court is aware, are very broad factors, and they talk, among other things, about the history and characteristics of a defendant. And I think that apart from the guideline calculation, the court is entitled to consider that obstructive element in determining this defendant's history and characteristics and the 3553A factors. What specific 3553A factor would fall in the post-offense conduct? I think so. And I think just in the general history and characteristics. Which specific? I'm saying post-offense conduct, which would lead to an increase in sentence. Which specific 3553A factor would address that? Well, again, I think that it just goes to the general history and characteristic of the defendant. I think that he simply demonstrated that he was not taking this prosecution seriously. He was being obstructive. And I think that that just sort of pertained to his general approach to the prosecution and the commission of this crime. And I acknowledge that it was after the commission of the crime, but I don't think it's something that the district court was necessarily required to ignore. So you're saying that post-Booker, with the Booker regime, that you can now take the same conduct into account both in increasing the guidelines and then in making further upward departures under Rule 3553A? I think that you can, Your Honor, because, again, the guideline As I say, there's a two-step process here. We understand that. Plainly under the Counsel, just a second. We understand the two-step process, okay? What I'm trying to say is that you're saying that the Booker regime changed the prior law on double counting. Because it's now letting you use the particular basis for the obstruction twice. Once in the calculation of guidelines and once in the calculation of your weighing of the 3553A factors. Yes, I am, Your Honor. And, again, it's because it's the government's position that in weighing the 3553A factors, that we're not looking at a departure there. We're simply considering a factor. Let me ask you this question. If this was pre-Booker and we're guided by these guidelines, would you agree we'd have to send it back because of double counting? You know, I think that you might, Your Honor, because I think under the pre-Booker regime, essentially you would be looking at increasing the mandatory nature of the guideline. And so I think that you probably would have a double counting issue. Okay. But, as I say, things have changed since Booker. Okay. Then under our current law, post-Booker, should we not and do we not take a look at guidelines as a possible guide, understanding they're not mandatory but voluntary? We take a look at those guidelines, as does a district court judge, correct? Yes, you do. So if the district court judge is going to rely to some extent voluntarily on the guideline and the district judge makes a mistake on that guideline, then shouldn't we have the district judge reconsider based upon the guideline as properly administered? Yeah. And I think it's clear under Cantrell that if a guideline is improperly calculated, that there's a problem that would require a remand. And, again, it's simply our position in this matter that the guideline wasn't improperly calculated. Except don't the guidelines themselves prohibit double counting? The guidelines do prohibit double counting when it comes to calculating the guideline. Yes, that's correct. But, I mean, the general policy behind the guidelines is that you don't increase the sentence for the same conduct twice or three times. That's correct, Your Honor. And is it your understanding, then, that if this were pre-Booker, that it is clear that the court did, in fact, weigh the obstruction not only in the initial calculation, which it clearly did, but also in the 3553A part of the process? That it was obstruction, underrepresented criminal history, and danger to the flight crew and so on? Yes, yes. And if it were pre-Booker, as I say, you could very well have a problem there. But given the fact that we've got this bifurcated process now and the guidelines are simply advisory, it's the government's position that a court is not restricted from considering, in the course of making the 3553A calculation, some matters that may have pertained to the guidelines. Thank you. Thank you, counsel. Thank you. Thank you. I'll return to my seat. Thank you very much. Thank you, Your Honors. I don't have anything further unless the Court has any questions. Thank you. Thank you.
judges: Wallace, Wardlaw, Fisher